1
2
3
4
5

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $7,000.00 IN U.S. CURRENCY,<br><br>APPROXIMATELY $8,950.00 IN U.S. CURRENCY,<br><br>APPROXIMATELY $10,000.00 IN U.S. CURRENCY,<br><br>Defendants. | Case No.  1:13-cv-01629-LJO-SMS<br><br><br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THE GRANT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR DEFAULT JUDGMENT**<br><br><br><br>(Docs. 10 and 11) |

In this civil forfeiture action, Plaintiff United States of America ("Government") seeks (1) default judgment against the interests of Gabriel Lorenzo Gonzales and Mark Dustin Levi Huggins, and (2) entry of a final forfeiture judgment to vest in the Government all right, title, and interest in the defendant currency.  The Government's motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 302(c)(19), and is considered in accordance with Local Rule A-540(d).

The undersigned has reviewed the papers and determined that this matter is suitable for decision without oral argument pursuant to Local Rule 230(h).  Having considered all written

1

materials submitted, the undersigned recommends that the District Court grant the Government

default judgment, enter final forfeiture judgment to vest in the Government all right, title, and

interest in the defendant currency, and order the Government, within ten (10) days of service of

an order adopting these findings and recommendations, to submit a proposed default and final

forfeiture judgment consistent with these findings and recommendations.

## I.      Factual Background[1]

On the morning of February 28, 2013, a Merced County Sheriff's Department Sergeant

saw a 2012 Ford Focus following another vehicle too closely in violation of California Vehicle

Code § 21703.  He stopped the car on Highway 152 near Billy Wright Road.  The driver

presented a Missouri driver's license identifying him as Gabriel Gonzales; the passenger's

Missouri state identification card said he was Mark Huggins.

The car smelled like unburned marijuana.  After informing Gonzales and Huggins that

they had been stopped for following too closely, the Sergeant commented on the odor and asked

whether anything illegal was in the car.  Both Huggins and Garcia disclosed that the car contained

marijuana.  Neither had a medical marijuana card.

The Sergeant first had Huggins step out of the car.  Huggins confirmed the presence of

marijuana but did not disclose its location.  He admitted that he and Garcia had smoked marijuana

just before the traffic stop.  Huggins told the officer that he and Garcia had flown into San

Francisco from Missouri the night before, stayed at a hotel (the name of which he could not

remember), and then picked up the rental car they were driving.  He and Garcia were on their way

to Fresno to visit a friend named John.  Huggins did not know John's surname, his address, or

telephone number.  When the Sergeant questioned Huggins' ability to contact John with so little

///

---

[1] These facts are derived from the Government's application and the Court's records.

information, Huggins replied that he had an address in the car.  But when the Sergeant asked to see the address, Huggins conceded that he did not have it.

In response to further questioning, Huggins disclosed that he had $9,000.00 in his pocket, which he had earned in his business of selling cars.  Huggins, who could not document the source of the cash, had no other source of income.  The Sergeant detained Huggins in the squad car and proceeded to question Gonzales.

Gonzales, who lived in St. Louis, Missouri, confirmed that he and Huggins had flown to San Francisco the night before and that they had rented the car, which was to be returned March 2, 2013.  Gonzales and Huggins were on their way to Los Angeles to visit a friend named John. Gonzales could not provide John's surname, address, or phone number, nor explain how they intended to locate or contact John when they reached Los Angeles.

Gonzales also disclosed the marijuana in the car without disclosing its location and indicated that he was carrying a lot of cash.  With Gonzales' consent, the Sergeant conducted a body search and found two bundles of U.S. currency.  Gonzales denied the Sergeant's request for consent to search the car.

Searching the car by hand, the Sergeant discovered ten grams of marijuana in the passenger side door.  He also found two cell phones with "314" area codes (St. Louis, Mo.).  Both phones contained numerous coded messages readily identifiable to law enforcement agents as referring to marijuana sales and drug trafficking.  The Sergeant found a camouflage bag and a black bag in the trunk: Gonzales identified the camouflage bag as belonging to him.  Among the clothing in Garcia's camouflage bag, the Sergeant found a red plaid shirt with bundles of currency in each of two buttoned pockets.  Garcia claimed the money, explaining that he had earned it selling cars.  Garcia could not document the source of the currency and could not explain why he was travelling with so much cash.

After having received *Miranda* warnings, Garcia again claimed the currency, explained that it came from car sales, and stated that he had no corroborating documentation.  He reiterated that he and Huggins were going to visit John, explained that he had met John in St. Louis but that John was not from St. Louis, and conceded that he had no contact information for John.  The marijuana belonged to both Garcia and Huggins; they had smoked some just before they were pulled over.

At the time that his currency was seized, Huggins had open cases in Missouri in which he was charged with possession of marijuana in January 2012 and February 2013.  Gonzales' criminal record included burglary and theft.

Following the traffic stop, the Merced County Sheriff's Department conducted controlled testing of the currency using a narcotic-detecting dog named "Riley."  Riley alerted to all three bundles of currency confiscated from Huggins and Garcia.

## II.   **Procedural History**

On October 8, 2013, the Government filed a verified complaint for forfeiture *in rem* against U.S. currency in the amounts of $7,000.00, $8,950.00, and $10,10.00.  It alleged that, pursuant to 21 U.S.C. § 881(a)(6), the currency constituted a thing of value furnished of intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.*

On November 19, 2013, based on the allegations of the amended complaint, the Clerk of Court issued three warrants for arrest of articles *in rem*.  The warrants were executed on November 21, 2013.

According to the Government's Declaration of Publication, a Notice of Civil Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty consecutive

days beginning on November 21, 2013. The Government also sent notice by certified mail to Huggins, Gonzales, and Jeffrey A. Tenenbaum, an attorney who had filed a claim in the administrative forfeiture action on behalf of Gonzales and Huggins. The Government received a return receipt from Attorney Tenenbaum. On December 2, 2013, Attorney Tenenbaum wrote to the United States that he no longer represented Gonzales or Huggins, confirmed Huggins' and Gonzales' mailing addresses, and advised that he had discussed the forfeiture action with both Gonzales and Huggins, who were aware of the pending action. Neither Gonzales nor Huggins filed an answer or otherwise appeared in this in this action.

As part of the Government's requests for entry of default, the United States Attorney declared under penalty of perjury that, on information and belief, neither Gonzales nor Huggins was in the military service or was an infant or incapacitated person. On January 7, 2014, the Clerk entered default against both Gonzales and Huggins. The Government moved for default judgment on March 19, 2014.

## III. Discussion

### A. Sufficiency of the Complaint

The Government contends that the allegations set forth in the verified complaint for forfeiture in rem and the cited facts provide ample grounds for forfeiture of the defendant currency. A complaint's sufficiency is one factor for consideration in deciding whether to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Money or other things of value are subject to forfeiture if they (1) are furnished or intended to be furnished by any person in exchange for a controlled substance, (2) constitute proceeds traceable to such an exchange, or (3) are used or intended to be used to facilitate any violation of the laws governing controlled substances. 21 U.S.C. § 881(a)(6).

///

The Government's verified complaint alleges that the defendant currency is subject to forfeiture since it constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance, in which all proceeds were traceable to such an exchange, and/or were used or intended to be used to facilitate the violation of one or more laws governing controlled substances.  As set forth above and in the verified complaint, the Merced County Sheriff's Department seized the three bundles of cash that are the defendant currency in the course of a traffic stop on February 28, 2013.

The complaint meets the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, in that it is verified; states the grounds for subject matter jurisdiction, in rem jurisdiction, and venue; describes the property seized and the circumstances of its seizure; and identifies the relevant statutes.  In the absence of assertion of interests in the defendant currency, this Court is not in a position to question the facts supporting its forfeiture.  As alleged, the facts set forth a sufficient connection between the defendant currency and illegal drug activity to support forfeiture.

The Government need not show a relationship between the proceeds of a drug crime and a specific drug transaction: Circumstantial evidence may support the forfeiture of the proceeds of a drug crime.  *See United States v. $30,670.00*, 403 F.3d 448, 467-70 (7th Cir. 2005) (concluding that totality of circumstances demonstrated that airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *$242,484.00*, 389 F.3d at 1160 (applying totality of circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction).

**B.**    **Notice Requirements**

The Fifth Amendment's Due Process Clause prohibits the Government from taking property without due process of law.  Individuals whose property interests are at stake are entitled

to notice and an opportunity to be heard.  The requisite notice was provided to both potential

claimants in this case.

### 1. Notice by Publication

Supplemental Rule G(4) provides that in lieu of newspaper publication, the Government

may publish notice "by posting notice on an official government forfeiture site for at least 30

consecutive days."  According to the Government's Declaration of Publication, a notice of civil

forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty

days beginning on November 21, 2013.  Accordingly, the Government satisfied the requirements

of notice to the potential claimants by publication.

### 2. Personal Notice

When the Government knows the identity of the property owner, due process requires "the

Government to make a greater effort to give him notice than otherwise would be mandated by

publication."  *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  In such cases,

the Government must attempt to provide actual notice by means reasonably calculated under all

circumstances to apprise the owner of the pendency of the forfeiture action.  *Dusenbery v. United

States*, 534 U.S. 161, 168 (2002)(*quotations omitted*).  *See also Mullane v. Central Hanover Bank

& Trust Co.*, 339 U.S. 306, 315 (1950) (requiring such notice "as one desirous of actually

informing the absentee might reasonably adopt to accomplish it").  "Reasonable notice, however,

requires only that the government attempt to provide actual notice; it does not require that the

government demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v.

United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be sent by

means reasonably calculated to reach the potential claimant.  Local Rule A-540 also requires that

a party seeking default action in rem demonstrate to the Court's satisfaction that due notice of the

arrest of the property has been given both by publication and by personal service of the person having custody of the property, or if the property is in the hands of a law enforcement officer, by personal service on the person who had custody of the property before its possession by a law enforcement agency or officer.  Notice must also be provided by personal service or certified mail, return receipt requested, on every person who has appeared in the action and is known to have an interest in the property, provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to provide notice without success. Loc. R. A-540(a).  Notwithstanding the Supplemental Rules and Loc. R. A-540(a), the Government provides sufficient notice when the notice complies with the requirements of F.R.Civ.P. 4.  *See* F.R.Civ.P. 4(n)(1) (providing that when a federal statute authorizes forfeiture, "[n]otice to claimants of the property shall then be sent in the manner provided by statute or by service of a summons under this rule").

Here, the Government served Huggins, Gonzales, and their attorney with the complaint, arrest warrant, publication order, and other related documents by certified mail, return receipt requested.  Receipt by Attorney Tenenbaum was confirmed by return of the certified mail receipt. Attorney Tenenbaum also provided written confirmation that he had discussed the notice and its implications with both Huggins and Gonzales, and that he no longer represented either potential claimant.

C.     **Failure to File Claim or Answer**

Supplemental Rule G(5) requires any person who asserts an interest in or right against the defendant currency to file a claim with the Court within 35 days after service of the Government's complaint or 30 days after the final publication of notice.  Supp. R. G(4)(b) & (5).  Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from

///

establishing standing as a party to a forfeiture action.  *Real Property*, 135 F.3d at 1317.  The

Clerk of Court properly entered default against Huggins and Gonzales on January 7, 2014.

     **D.**     **Default Judgment**

     The Government seeks judgment against the interests of Huggins and Gonzales, and final

forfeiture judgment to vest in the Government all right, title, and interest in the defendant

currency.  The Supplemental Rules do not set forth a procedure to seek default judgment in rem.

Supplemental Rule A provides, "The Federal Rules of Civil Procedure also apply to the foregoing

proceedings except to the extent they are inconsistent with these Supplemental Rules."

     Pursuant to the Federal Rules of Civil Procedure, default entry is a prerequisite to default

judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend, and the failure is shown by affidavit or otherwise, the clerk must enter

the party's default."  F.R.Civ.P. 55(a).  Generally, the default entered by the clerk establishes a

defendant's liability.

> Rule 55 gives the court considerable leeway as to what it may require as a
> prerequisite to the entry of default judgment.  The general rule of law is that upon
> default the factual allegations of the complaint, except those relating to the
> amount of damages, will be taken as true.

> *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)
> (*internal citations and quotation marks omitted*).

     As noted above, the Government properly obtained default entries against the interests of

Huggins and Gonzales.  There is no impediment to the default judgment sought by the

Government against them.  The Government properly seeks judgment against the interests of the

entire world, that is, a final forfeiture judgment to vest in the Government all right, title, and

interest in the defendant currency.  "A judgment in rem affects the interests of all persons in the

designated property. . . . [T]he plaintiff is seeking to secure a pre-existing claim in the subject

property and to extinguish or establish the nonexistence of similar interest of particular persons."

*Hanson v. Denckla*, 357 U.S. 235, 246 n. 12 (1958). Because of the defaults of Huggins and Gonzales, the Government is entitled to final forfeiture judgment.

## RECOMMENDATIONS

In light of the reasons discussed above, the undersigned recommends that

1.    The District Court grant Plaintiff United States of America default judgment against the interests of Gabriel Lorenzo Gonzales and Mark Dustin Levi Huggins;

2.    The Clerk of Court enter final forfeiture judgment to vest in Plaintiff United States of America all right, title, and interest in the defendant currency;

3.    The District Court order Plaintiff United States of America, within ten (10) days of service of an order adopting these findings and recommendations, to submit a proposed judgment of default and final forfeiture consistent with the findings and recommendations and with the order adopting them.

These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court, serving a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __April 23, 2014__                             _____/s/ Sandra M. Snyder_____
                                                                      UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28